ESTADO LIBRE ASOCIADO DE PUERTO RICO, peticionario y recurrido, *v.* HOTEL COAMO SPRINGS, INC. y OTROS, partes con interés y recurrentes.

*Número:* RE-91-395        *Resuelto:* 8 de marzo de 1995

*Héctor E. Pabón Vega* y *Manuel Izquierdo Encarnación*, de *Trías, Acevedo & Otero*, abogados de los recurrentes; *Lino J. Saldaña* e *Ilsa Y. Figueroa Arús*, de *Saldaña, Rey & Alvarado*, abogados del recurrido.

### SENTENCIA

Evaluados los planteamientos de las partes a la luz de los autos originales, Exposición Narrativa de la Prueba y evidencia documental, resolvemos que los demandados-recurrentes Hotel Coamo Springs, Inc., *et al.*, deben ser compensados por el valor que las aguas termales le añaden a los terrenos expropiados, mas no así en cuanto a las ruinas estructurales allí existentes. El Tribunal de Primera Instancia, previa vista evidenciaria, procederá a determinar la justa compensación de las aguas termales como parte de los terrenos expropiados.

Simultáneamente con este mandato, se devolverán los autos originales a la sala sentenciadora para los trámites correspondientes.

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió una opinión concurrente y disidente. El Juez Asociado Señor Fuster Berlingeri emitió una opinión de conformidad. El Juez Asociado Señor Rebollo López emitió una opinión disidente. El Juez Presidente Señor Andréu García y los Jueces Asociados Señores Hernández Denton y Alonso Alonso se inhibieron.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri.

Como se sabe, en nuestro país el Estado no puede incautarse de propiedad privada para uso público si no media el pago de una *justa compensación*. Así lo ordena nuestra Constitución en el Art. II, Sec. 9, L.P.R.A., Tomo 1, y lo reitera la Ley de Expropiación Forzosa, 32 L.P.R.A. sec. 2907. La justa compensación por la expropiación se determina judicialmente conforme el procedimiento especial establecido por la referida ley.

En el caso ante nos, el Tribunal de Primera Instancia erró al determinar la justa compensación que debe pagar el Estado por los terrenos expropiados al Hotel Coamo Springs, Inc. Su valoración de dichos terrenos no tomó suficientemente en cuenta las aguas termales subyacentes. Por ello procede que devolvamos los autos a la sala sentenciadora para que se evalúen con más precisión los terrenos en cuestión.

Debe quedar claro que no se trata de darle un valor a las aguas termales como tal. El valor de las aguas termales no se puede determinar independientemente de los terrenos debajo de los cuales está localizado el manantial. De lo que se trata es de determinar el valor de los terrenos tomando en cuenta la existencia de las aguas termales subyacentes (4 *Nichols on Eminent Domain* Sec. 1322 (ed. rev. 1993)), es decir, de precisar el valor que dichas aguas le añaden a los terrenos expropiados.

De la prueba que tuvo el Tribunal de Primera Instancia surge claramente que, por razón precisamente de las aguas termales en cuestión, el uso más productivo de los terrenos expropiados es para *fines turísticos*. Por ello, no tendría mucho sentido determinar el valor de dichos terrenos a base de ventas de predios destinados a la agricultura. Lo

propio sería utilizar para ello el análisis de ventas de predios comparables destinados para fines turísticos.

El foro a quo tuvo ante sí, como venta comparable, la información sobre una finca de cabida similar a la de los terrenos expropiados que se adquirió para establecer el hotel Holiday Inn en Ponce. Sin embargo, no usó el precio de venta de dicha finca ($12,000 por cuerda) para determinar la justa compensación de los terrenos expropiados, aparentemente, porque estimó que dicha finca, por tener vista panorámica y por estar cerca de un balneario, no era comparable con los terrenos expropiados. Esto delata precisamente el error cometido por el Tribunal de Primera Instancia en su valoración de los terrenos de los Baños de Coamo. El potencial turístico de esos terrenos es de mayor magnitud que el que le atribuyó la sala sentenciadora. Los baños termales tienen, evidentemente, un gran atractivo para solaz y entretenimiento. En una isla como la nuestra, de tantas playas y parajes con vista panorámica, los Baños Termales de Coamo han constituido siempre una atracción única, excepcional. En una época fue uno de los lugares de recreación más atrayentes de Puerto Rico. Su singularidad y su pasado histórico ciertamente le dan, *al menos*, un valor comparable con los lugares que tienen vista panorámica y balnearios cercanos. Por ello, estimo que los terrenos en cuestión debieron valorarse en algo más que lo que le adjudicó el Tribunal de Primera Instancia. Estoy conforme con la decisión de la mayoría de devolver el asunto a dicho foro —para que evalúe más equitativamente dichos terrenos— por la razón antes señalada.

— o —

Opinión concurrente y disidente del Juez Asociado Señor
Negrón García.

I

El 31 de mayo de 1973 la Asamblea Legislativa aprobó
la Resolución Conjunta Núm. 48 que declaró *"utilidad pú-
blica las edificaciones y las aguas termales conocidas como*
*Baños de Coamo* y veinticinco (25) cuerdas de terreno, que
incluyan el sitio donde ubican las edificaciones". (Énfasis
suplido.) 1973 Leyes de Puerto Rico 632–633. El 8 de
agosto de 1975 el Estado instó en el Tribunal Superior,
Sala de San Juan, acción de expropiación forzosa para ad-
quirir 24.4142 de esas cuerdas y consignó $195,310 como
justa compensación. El 11 de agosto dicho foro ordenó el
traspaso del dominio del terreno a la Administración de
Terrenos de Puerto Rico y la inscripción de su título en el
Registro de la Propiedad.

El 24 de febrero de 1976, Hotel Coamo Springs, Inc. (en
adelante Coamo), propietario de los terrenos expropiados
donde ubicaba un hotel de treinta (30) habitaciones cons-
truido en 1847 y manantiales termales, aceptó las alega-
ciones principales pero impugnó la compensación. Alegó
que las aguas termales y sulfurosas valían en exceso de
$20,000,000; formaba parte de un proyecto turístico en el
cual se había invertido dinero y cuyo valor excedía los
$30,000,000, y era parte de una propiedad de mayor cabida
que había sufrido daños por desmembramiento en exceso
de $30,000,000.

Luego de varios incidentes procesales, incluso un tras-
lado al Tribunal de Distrito Federal para el Distrito de
Puerto Rico, se celebró el juicio. La controversia central

giró en torno a la justa compensación.([1]) Al respecto, el perito del Estado, Sr. Pedro Monserrate, utilizó el método comparativo y concluyó que los terrenos valían $300,734.39. Consideró que las estructuras antiguas existentes a la fecha de la expropiación, por ser ruinas, no incrementaban el valor del terreno. Por Coamo, el Ing. Domingo Sanfiorenzo —sobre *los terrenos*— presentó tres (3) ventas comparables todas con vista al mar; sin embargo, su opinión no fue acogida por el tribunal. Además, Coamo presentó varios informes de la Junta de Planificación, fotografías y planos del hotel, resoluciones de la Legislatura avalando la construcción de un parador y documentación histórica sobre los Baños de Coamo. En torno a *las aguas termales*, el tribunal no admitió el testimonio del Ing. Héctor Zabala Toro por carecer de experiencia previa en la valoración de aguas termales y, por ende, no estar cualificado; lo permitió como ingeniero civil, con conocimiento en hidrología, hidrogeología e hidráulica. Además, aunque Coamo alegó que tenía proyectada la construcción de un complejo turístico, no aportó prueba de que contara con las aprobaciones y el permiso de las agencias gubernamentales correspondientes. Tampoco sobre la viabilidad del proyecto, los planos de construcción ni su financiamiento; sólo sometió un desarrollo preliminar con un *permiso vencido desde 1967*. En síntesis, esta prueba fue insuficiente para sostener el reclamo del proyectado complejo turístico.

El 25 de mayo de 1989 Coamo solicitó al tribunal que tomara conocimiento judicial de las fluctuaciones de las tasas de interés prevalecientes en el mercado, con el objetivo de que así fuese compensada a base de la diferencia entre el monto consignado y el que finalmente se adjudicara como justa compensación. Acompañó las "Estadísticas Socioeconómicas" de la Junta de Planificación (1988) en torno al índice de precio del consumidor; las tablas sobre

---

([1]) El Estado enmendó su petición en varias ocasiones, expropiando finalmente 29.4034 cuerdas y consignando el 15 de julio de 1989 la suma de $300,731.

*Interest Rates Money and Capital Markets* correspondientes a abril de 1975, diciembre de 1978, 1981, 1984, 1985, 1986, 1987, noviembre de 1988 y abril de 1989, publicadas por la Junta de Gobernadores del Sistema de Reserva Federal, Washington, D.C., e incluyó el Reglamento Núm. 78-1 de la Oficina del Comisionado de Instituciones Financieras de intereses sobre sentencias. El tribunal negó esa solicitud por entender que esa "no es forma de someter prueba documental".

El 30 de julio de 1990 dicho foro dictó una escueta sentencia (Hon. Carlos Polo) en que decretó el título absoluto en el Estado y declaró justa compensación $338,139.10, más intereses. El 23 de agosto de 1990 Coamo pidió determinaciones de hecho y conclusiones de derecho adicionales. Fueron denegadas el 30 de mayo de 1991 (Hon. Luis R. Apellaniz Padró).[2] No conforme, el 26 de julio de 1991 Coamo *et al.* presentaron este recurso.[3] Acordamos revisar.

## II

*La propiedad* es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquier otra. Concede el derecho de gozarla y disponerla sin más limitaciones que las legales. Art. 280 del Código

---

[2] El Juez Apellaniz Padró intervino en el caso luego de la renuncia del Juez Polo.

[3] Sus señalamientos fueron:

"1. Erró el tribunal de instancia al estimar la constitucionalidad de la tasa de interés a pagarse como parte de la justa compensación en casos de expropiación forzosa.

"2. Erró el tribunal de instancia negándose a tomar conocimiento judicial de las fluctuaciones de las tasas de interés prevalecientes en el mercado a tenor con la solicitud de la recurrente.

"3. Erró el tribunal de instancia negándose a cualificar como perito para estimar el valor de las aguas termales al Ing. Héctor Zabala Toro, privando en su consecuencia a la recurrente de su derecho a justa compensación por dicha partida.

"4. Erró el tribunal de instancia al estimar la justa compensación que asiste a la recurrente." Solicitud de revisión y/o apelación, pág. 4.

Civil, 31 L.P.R.A. sec. 1111. En *The Richards Group v. Junta de Planificación*, 108 D.P.R. 23 (1978), reconocimos que conceptualmente "la propiedad" no es de contenido estático; representa una idea que históricamente se ha distinguido por su extraordinaria fluidez. Ese pronunciamiento simplemente revistió el enfoque judicial contemporáneo del derecho de propiedad muy distante del que conocieron los autores de la Constitución federal. Hoy nadie lo califica de "sagrado" como ocurrió frecuentemente en el siglo pasado. *Luan Investment Corp. v. Román*, 125 D.P.R. 533 (1990); *Rivera v. R. Cobián Chinea & Co.*, 69 D.P.R. 672, 676 (1949).

Si bien en las sociedades democráticas la propiedad entraña determinados derechos —que viven en competencia continua con otros intereses, privados y públicos de importancia, cambiante y en ocasiones crecientes— la extensión y el grado en que tienen que ceder ante otros valores dependen de las circunstancias de cada controversia. *The Richards Group v. Junta de Planificación*, supra, pág. 35.

Hemos resuelto que "[a]unque de carácter fundamental, el disfrute de la propiedad no es un derecho absoluto. La Asamblea Legislativa puede establecer limitaciones en beneficio del bienestar general. *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *E.L.A. v. Márquez*, 93 D.P.R. 393 (1966). Entre estas restricciones se encuentra el poder de expropiación, el cual faculta al soberano a desposeer de una cosa a su propietario para destinarla a un fin público". (Énfasis en. el original.) *Culebra Enterprises Corp. v. E.L.A.*, 127 D.P.R. 943, 952 (1991). A fin de cuentas, "el Estado tiene un poder inherente para realizar actos que promuevan la salud, la seguridad y el bienestar de la comunidad mediante reglamentación razonable *que limite el uso de una propiedad*". (Énfasis suplido.) *Arenas Procesadas, Inc. v. E.L.A.*, 132 D.P.R. 593, 603 (1993).

## III

Recientemente en *E.L.A. v. Rexco Industries, Inc.*, 137 D.P.R. 683 (1994), resolvimos que la tasa de interés a pagarse sobre la diferencia entre la cantidad consignada y la que se decretó justa compensación es aquélla dispuesta en el Reglamento 78-1 publicado por la Oficina del Comisionado de Instituciones Financieras.

Dicha decisión adjudica los señalamientos sobre el pago de intereses en procedimientos de expropiación. De ese modo evitamos imponerle al Estado una carga que no le corresponde, como ocurre al presente, cuando los intereses del mercado son menores al seis porciento (6%). Tampoco menoscabamos el derecho constitucional del propietario a ser compensado cuando los intereses del mercado son mayores. Con este mandato dejamos a las fuerzas naturales y dinámicas del mercado la imposición de los intereses a pagarse y cumplimos con el mandato constitucional de justa compensación. Art. II, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1; *Arenas Procesadas, Inc. v. E.L.A.*, supra; *Culebra Enterprises Corp. v. E.L.A.*, supra; *E.L.A. v. Rosso*, 95 D.P.R. 501, 536 (1967); *M. Mercado e Hijos v. Tribl. Superior*, 85 D.P.R. 370 (1962).

## IV

Aclarado este extremo, coincidimos con el foro de instancia en que el ingeniero Zabala Toro no estaba cualificado como perito tasador en aguas termales.

La Regla 53 de Evidencia, 32 L.P.R.A. Ap. IV, define al perito como aquel que "posee especial conocimiento, destreza, experiencia, adiestramiento o instrucción suficiente" sobre un asunto. En *San Lorenzo Trad., Inc. v. Hernández*, 114 D.P.R. 704, 710–711 (1983), señalamos:

" 'No sólo cualifican los "expertos" en sentido estricto (médicos, científicos, arquitectos, ingenieros, etc.), sino cualquier per-

sona que a juicio del juez que preside la causa tiene alguna preparación o conocimiento especial sobre la materia objeto de la declaración. Aun la experiencia se incluye como criterio.' *Reglas de Evidencia para el Tribunal General de Justicia*, Ed. Equity, 1979, Comentarios sobre la Regla 53, págs. 55–56. Como señala Font Serra, 'una característica de peculiar relieve de la pericia es que, por regla general, se desecha su vertiente teórica. Lo que importa es su utilidad práctica. Es más, una pericia de carácter teórico tiene valor, en cuanto otra persona pueda aplicarla a situaciones reales. Este sentido teleológico de utilidad es de tal importancia, que se llega a calificar la pericia como actividad de tipo práctico, no porque esencialmente lo sea, sino porque, aun cuando se trate de operaciones científicas teóricas, se ven desde un prisma técnico'. *Op. cit.*, pág. 4." Véase, además, *Pueblo v. Echevarría Rodríguez I*, 128 D.P.R. 299 (1991).

En el presente caso no cuestionamos el vasto conocimiento y experiencia del ingeniero Zabala Toro en hidrología, hidráulica e hidrogeografía. No empece, su *absoluta* falta de experiencia previa y conocimiento en el campo de las tasaciones impide esa cualificación.

Por otro lado, el perito del Estado, ingeniero Monserrate, cuyas cualificaciones fueron aceptadas, preparó un informe, a nuestro juicio, *incompleto, que no puede servir de base para establecer la justa compensación.* Usó el método de ventas comparables[4] y tasó los terrenos en $300,734.39, pero *excluyó* el valor de las aguas termales.

La ausencia de prueba pericial en torno a *las aguas termales, de características únicas en el país*,[5] reconocidas

---

[4] A saber, una finca en el Barrio Canas, donde hoy día ubica el Hotel Holiday Inn y tres (3) fincas en el Barrio San Ildefonso de Coamo desarrolladas en solares residenciales.

[5] De la evidencia presentada por Coamo surge que desde 1571 se han reconocido las cualidades especiales de los Baños de Coamo; en específico, el cosmógrafo cronista Juan López de Velasco en su descripción sobre la Isla de Puerto Rico expresó: "...y en el Valle de Coamo hay unos baños de agua caliente provechosa." R. Rivera Bermúdez, *Historia del Balneario Baños de Coamo*, 1976, pág. 3. Además, Monsieur Castebert, doctor médico de Mompeller, expresó:

"...cualesquiera que sea el origen y propiedades de estas aguas, lo cierto es que por los admirables efectos que se observan en otras semejantes, han merecido los gloriosos títulos, de fuentes de salud, aguas de larga vida, panacea divina y otras denominaciones semejantes para significa[rn]os la nobleza de sus virtudes; Igneus

específicamente en la Resolución Núm. 48 de la Asamblea Legislativa como de "utilidad pública", implica devolver los autos originales a instancia para que, previa audiencia y prueba pericial, determine el valor justo y razonable.(6)

En reiteradas ocasiones hemos velado celosamente y puesto en vigor la política pública "de nuestro patrimonio cultural e histórico"; tenemos el deber de asegurar su preservación. *Director I.C.P. v. Fitzgerald, etc.*, 130 D.P.R. 46 (1992); *López, Fed. Coms. Unidos v. Mun. de San Juan*, 121 D.P.R. 75, 92 (1988).

Concluimos, pues, que las estructuras antiguas existentes al momento de la expropiación son compensables. Estas no fueron tasadas por el ingeniero Monserrate "por no aportar al valor de los terrenos", aún cuando tienen un valor histórico que data desde mediados del siglo pasado y forman parte del raigambre cultural e histórico de nuestra isla. R. Rivera Bermúdez, *Historia del Balneario Baños de Coamo*, 1976, pág. 16.(7)

Las fotografías de la construcción del nuevo parador, ad-

---

est ollis vigor, est coelestis origo; y si son ciertas todas las que atribuye Don José Sabater a éstas de Coamo, le convienen perfectamente estos títulos, pues apenas se hallará accidente en la naturaleza humana, especialmente para los efectos violentos, herpéticos, e intercutáneos, que por ser frecuentes en esta Isla convendría mucho un exacto análisis de las cualidades de estos baños." Rivera Bermúdez, *op. cit.*, pág. 11.

(6) El Código Civil dispone que "[l]a propiedad y uso de las aguas pertenecientes a corporaciones o particulares están sujetos a la Ley de Expropiación ...". Art. 357 del Código Civil, 31 L.P.R.A. sec. 1394.

La existencia de depósitos minerales en una propiedad expropiada es un elemento del monto de la justa compensación, toda vez que afectan su valor en el mercado. Desde el siglo pasado, la justa compensación considera el valor en el mercado del terreno en su totalidad, incluyendo todos sus componentes valorativos. *Montana Railway Co. v. Warren,* 137 U.S. 348 (1890). *U.S. v. Shoshone Tribe*, 304 U.S. 111 (1938), confirmó el pago de los depósitos minerales. Para valorarlos, los tribunales han reconocido los testimonios periciales. *Montana Railway Co. v. Warren*, supra.

En situaciones en que no existen ventas comparables de los minerales, pueden utilizarse otras valoraciones ideales, tales como la cantidad que con toda probabilidad se llegaría a un acuerdo en una negociación justa entre dueño y comprador. *Olson v. United States*, 292 U.S. 246 (1934). Véanse, además: Anotación, *Valuation of Mineral Interests in Federal Condemnation Proceedings*, 40 A.L.R. Fed. 656 (1978); 4 *Nichols on Eminent Domain* Secs. 5.26[1], [2] y 5.29.

(7) "...ningún lugar logró obtener entre los temporadistas, convalescientes y veraneantes, la fama al Balneario Los Baños, situado en el Barrio San Ildefonso, de Coamo, cuyas aguas minero-medicinales habían analizado y recomendado desde 1847 ...". Rivera Bermúdez, *op. cit.*, págs. 22–23.

mitidas en evidencia, reflejan que estas edificaciones antiguas fueron sustancialmente incorporadas en su construcción. Así obviamente lo entendió la Asamblea Legislativa al declarar de utilidad pública, *tanto las edificaciones* como las aguas termales. Resolución Conjunta Núm. 48.

Al seguir este curso de acción, lejos de dar una injustificada oportunidad a la parte demandada Coamo de dilucidar la suficiencia de la compensación consignada por el Estado, promovemos la celebración de un procedimiento en que el juzgador de instancia cuente con todos los elementos que le permitan hacer cumplida justicia conforme el mandato de la resolución.

Como foro apelativo estamos en idéntica posición que el tribunal sentenciador para apreciar y aquilatar el valor probatorio de la prueba pericial. *A fin de cuentas, nos negamos a seguir indefectiblemente el erróneo criterio del Tribunal Superior al aceptar el testimonio de un perito que rindió un informe incompleto que constituye un inadecuado fundamento para establecer la justa compensación, pues excluyó las aguas termales y no adjudicó valor alguno a las estructuras antiguas por entender que éstas eran ruinas que no incrementaban el valor de los terrenos.*

Repetimos, la actuación del perito del Estado, y la del Tribunal Superior que la convalidó, pasan por alto la declaración de principios y el mandato legislativo contenida en la citada *Resolución Conjunta* en cuanto califica de "utilidad pública" las edificaciones y aguas termales.

El caso ante nos dista mucho de ser el de un terreno común cuyo menor o mayor valor depende de la forma, el tipo de terreno, las colindancias, la ubicación y otras características generales. En estos no es gravoso ni problemático conseguir peritos capacitados para emitir un criterio ilustrado. Distinta es la situación, sin embargo, cuando se expropia un terreno con aguas termales, de características

muy particulares. ¿Cuántos terrenos en nuestro país cuentan con aguas termales? ¿Es frecuente conseguir personas con pericia en el campo de tasación de aguas de ese tipo? Siendo este un caso peculiar y único en materia de expropiaciones, no podemos actuar con igual rigor que en casos convencionales y frecuentes. Reconocemos la diligencia y un intento *bona fide* del demandado Coamo en tratar de probar el valor de las aguas. Fue razonable su gestión de conseguir un experto en hidrología, hidráulica e hidrogeografía. No sería justo penalizarlo en estas circunstancias. De otra parte, debemos consignar que le está vedado al Estado ir contra sus propios actos, pues mediante una expresión con *imprimátur oficialista*, declaró de utilidad pública las edificaciones y las aguas termales; *en ese pronunciamiento puso su confianza el demandado Coamo*. No puede ahora el ente gubernamental dar marcha atrás y excluir de compensación lo que declaró útil y beneficioso, aprovechándose de la dificultad del demandado Coamo en conseguir un experto tasador de aguas. El Estado sabía que esas aguas eran valiosas; por algo expropió. *No puede ahora el Estado adquirir la titularidad de las aguas sin pagar por ellas.* Si así lo hiciera, se enriquecería injustamente.

Si el perito del Estado excluyó de su informe las aguas y expresó que las ruinas estructurales no añadían valor alguno a los terrenos —ello en contra de una clara expresión legislativa de que debían, como política pública del Estado ser utilizados "como centro de recreo y veraneo para el disfrute del pueblo de Puerto Rico"— y el perito de Coamo no quedó cualificado por ausencia total de experiencia en el campo de la tasación, *entonces ninguno ilustró suficientemente al tribunal*. El foro de instancia no tenía que escoger obligatoriamente el criterio de alguno de ellos, mucho menos uno que menoscaba la valoración de política pública hecha por la Legislatura. "Los tribunales tienen amplia

discreción para evaluar el testimonio pericial y pueden descartar las opiniones y conclusiones de los peritos." E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, Vol. I, pág. 270.

En casos técnicos, la utilización de peritos "en la consecución del ideal de la verdad, es objetivo legítimo". *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762, 808 (1987). A ese ideal responde nuestro criterio y conformidad con la Sentencia en cuanto a que el foro de instancia determine el valor de las aguas termales y, naturalmente, el disentir sobre la no compensabilidad de las estructuras antiguas.

— o —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

¿Procede que este Tribunal le brinde una *segunda* oportunidad a una parte demandada en un procedimiento de expropiación forzosa para que ésta presente, en esta *segunda* ocasión, prueba creíble y admisible en evidencia respecto al "justo valor" de una propiedad que le ha sido expropiada por el Estado, cuando la prueba *originalmente* presentada por dicha parte demandada en la *vista evidenciaria* que a esos efectos se llevó a cabo ante el tribunal de instancia fue *correctamente* evaluada y rechazada por dicho foro judicial *por ser dicha prueba defectuosa, indigna de crédito e inadmisible en evidencia?*

Una mayoría de los integrantes del Tribunal, mediante la Sentencia mayoritaria que hoy emite, lo cree procedente. Por entender que el curso de acción que dicha Mayoría sigue, al así decidir, es uno no sólo *sumamente raro e inaudito* sino que *uno de los más erróneos* que jamás hayamos visto —*curso de acción que es contrario a toda nuestra jurisprudencia anterior relativa a expropiaciones, el cual trastoca y desestabiliza no sólo el mencionado campo del derecho sino que toda la litigación civil en nuestra jurisdicción*— es que disentimos.

## I

La Sec. 1 de la Resolución Conjunta Núm. 48 de 31 de mayo de 1973, aprobada por la Asamblea Legislativa de Puerto Rico, dispone:

> ... Se declara que es política pública del Estado Libre Asociado de Puerto Rico el utilizar los Baños de Coamo como centro de recreo y veraneo para el disfrute del pueblo de Puerto Rico. Consecuentemente, *se declaran de utilidad pública las edificaciones y las aguas termales conocidas como Baños de Coamo y veinticinco (25) cuerdas de terreno,* que incluyan el sitio donde ubican las edificaciones. *Se declara también que es necesario adquirir la posesión o el dominio de dichas edificaciones y terrenos para los fines de esta resolución.*[1] (Énfasis suplido.)

En virtud de la misma, el Estado Libre Asociado de Puerto Rico radicó ante el Tribunal Superior de Puerto Rico, Sala de San Juan, petición de expropiación forzosa con el objetivo de adquirir la referida propiedad, consignando en corte la suma de $195,310 como "justo valor" de la misma. Tres (3) días más tarde, el 11 de agosto de 1975, el tribunal de instancia ordenó el traspaso del dominio de dicha propiedad a la Administración de Terrenos de Puerto Rico y la inscripción del título en el Registro de la Propiedad.

El 24 de febrero del siguiente año, el original propietario de dichos terrenos, Hotel Coamo Springs, Inc., aun cuando aceptó las alegaciones fundamentales de la demanda, impugnó la suma de dinero consignada por el Estado como "justo valor" de dicha propiedad. Entre otras cosas, alegó que no se le estaba compensando por el valor de las *aguas termales* existentes en dichos terrenos y el de ciertas *estructuras antiguas* existentes en los terrenos expropiados.

---

[1] Véase Vol. de 1973 de Leyes de Puerto Rico, a las págs. 632–633.

Se celebró, ante el foro de instancia, *la correspondiente vista evidenciaria.* En apoyo de la posición propulsada por Hotel Coamo Springs, Inc., *y en relación con el valor propiamente de los terrenos y edificaciones,* dicha parte presentó al perito tasador Domingo Sanfiorenzo. Del informe presentado por éste surge que, en su opinión, los terrenos tenían un valor de $354,000. Debe señalarse que el referido tasador, adicionalmente, afirmó que las estructuras y paredes de edificios antiguos tenían un valor depreciado de $105,500. El perito Sanfiorenzo, sin embargo, *no* ofreció explicación alguna sobre cuál fue el costo, y la depreciación, que tomó como base para fijar los valores antes señalados.[2]

En cuanto al *valor de las aguas termales* existentes en dichos terrenos, Hotel Coamo Springs, Inc., *intentó* presentar el testimonio pericial del Ingeniero Héctor Zabala Toro. El tribunal de instancia *se negó a admitir* el testimonio de éste *como perito tasador* en cuanto al *valor* de las *aguas termales por razón de que* dicho ingeniero —a pesar de ser perito en hidrología, hidrogeología e hidráulica— *no tenía experiencia alguna en el campo de la tasación.*

Por parte del Estado, declaró en dicha vista evidenciaria, el perito tasador Pedro Monserrate. Su testimonio fue a los efectos de que los terrenos tenían un valor de $300,734.39, suma de dinero a la que llegó a base del método comparativo de ventas. El perito Monserrate testificó, adicionalmente, que las estructuras existentes en dichos terrenos no incrementaban en forma alguna el valor de los mismos por razón de que dichas estructuras estaban en ruinas.

A base de la prueba presentada por las partes, y admitida en evidencia, el tribunal de instancia determinó que la "justa compensación" a ser pagada por el Estado al Hotel

---

[2] Somos del criterio que, examinado dicho testimonio en forma objetiva, el mismo se reduce, realmente, a una conclusión sobre el valor de la propiedad. Inferimos que, posiblemente, debido a ello es que el tribunal de instancia descartó dicho testimonio pericial y/o no le dio mucho crédito al mismo.

Coamo Springs, Inc., por los terrenos expropiádoles lo era la de $338,139.10, más intereses. La parte demandada solicitó del foro de instancia la emisión de determinaciones de hecho y conclusiones de derecho adicionales. Su solicitud a esos efectos fue denegada.

Inconforme con la valoración realizada por el tribunal de instancia, el 26 de julio de 1991 la demandada Hotel Coamo Springs, Inc., acudió ante este Tribunal en revisión de la referida actuación judicial, imputándole al foro de instancia la supuesta comisión de cuatro (4) errores, *a saber*:

1. Erró el tribunal de instancia al estimar la constitucionalidad de la tasa de interés a pagarse como parte de la justa compensación en casos de expropiación forzosa.
2. Erró el tribunal de instancia negándose a tomar conocimiento judicial de las fluctuaciones de las tasas de interés prevalecientes en el mercado a tenor con la solicitud de la recurrente.
3. Erró el tribunal de instancia negándose a cualificar como perito para estimar el valor de las aguas termales al Ing. Héctor Zabala Toro, privando en su consecuencia a la recurrente de su derecho a justa compensación por dicha partida.
4. Erró el tribunal de instancia al estimar la justa compensación que asiste a la recurrente. Solicitud de revisión y/o apelación, pág. 4.

## II

Expedimos el auto de revisión radicado. En el día de hoy, una mayoría de los integrantes del Tribunal —*a pesar de que entiende y concluye que el perito presentado por la parte demandada recurrente no estaba cualificado como perito tasador en aguas termales debido a su absoluta falta de experiencia previa y conocimiento en el campo de las tasaciones, razón por la cual concluye que actuó correctamente el foro de instancia al negarse a admitir su testimonio*— erróneamente determina que *procede devolver* el caso al foro de instancia para que dicho foro, previa audiencia y

prueba pericial, determine el valor justo y razonable de las referidas aguas termales.

Naturalmente, *no* podemos estar de acuerdo con tan *errada* y *asombrosa* actuación de la mayoría de los integrantes del Tribunal. En palabras sencillas, el Tribunal —*no sabemos por qué razón*— le concede una *segunda* oportunidad a la parte demandada recurrente para presentar a nivel de instancia la prueba pericial sobre el valor de la propiedad expropiada *que debió haber sido presentada* por la distinguida y experimentada representación legal de dicha parte en el juicio plenario que a esos efectos *ya celebró* el tribunal de instancia.

### III

Conforme a nuestro ordenamiento, la "persona" con interés en un terreno o propiedad, que es objeto de expropiación por el Estado, tiene el derecho a ser notificado y a tener audiencia sobre, entre otros, su reclamación de "justa compensación". Art. 4 de la Ley de Expropiación Forzosa, 32 L.P.R.A. sec. 2905.

Constituye norma *reiterada*, y *trillada*, en nuestra jurisdicción que, aun cuando el Estado es el que inicia el procedimiento de expropiación forzosa, *el peso de la prueba respecto a si el justo valor del bien expropiado es mayor que la suma de dinero consignada en el tribunal por el Estado recae sobre la parte que reclama dicho aumento en valor.* Véanse: *Martínez Rivera v. Tribunal Superior*, 85 D.P.R. 1, 11 (1962); *Pueblo v. McCormick, Alcaide & Co.*, 78 D.P.R. 939, 952 (1956); *Canino v. Tribl. de Expropiaciones*, 70 D.P.R. 152 (1949); *Pueblo v. García*, 66 D.P.R. 504, 508 (1946). Véanse: *E.L.A. v. Pérez*, 98 D.P.R. 781, 798 (1970); *E.L.A. v. Fonalledas Córdova*, 84 D.P.R. 573, 579 (1962); *Estado Libre v. Bravo*, 79 D.P.R. 779, 785 (1956); *Pueblo v. Soc. Agríc. Mario Mercado e Hijos*, 72. D.P.R. 792 (1951).

Véanse, en adición: *Kimball Laundry Co. v. U.S.*, 338 U.S. 1, 20 (1949); *U.S. ex rel. T.V.A. v. Powelson*, 319 U.S. 266, 273–274 (1943).

Llana y sencillamente, y como expresara este Tribunal —*desde hace más de cuatro (4) décadas*— en *Pueblo v. 632 Metros Cuadrados de Terreno*, 74 D.P.R. 961, 976 (1953), cuando la *cuestión en controversia* en un caso de expropiación lo es el importe o cuantía de la compensación a pagar por el Estado, "(1) el demandado es en efecto el demandante; (2) éste [el demandado] debe presentar su evidencia en primer lugar; y (3) [éste] tiene el peso de la prueba en cuanto a valoración". *Es así de simple y sencillo.*

Precisamente debido a lo anteriormente expresado es que la demandada Hotel Coamo Springs, Inc., presentó a nivel de instancia el testimonio del perito tasador Sanfiorenzo, respecto al valor de los terrenos en sí, y que *intentó* presentar el testimonio del Ingeniero Zabala, respecto al valor de las aguas termales propiamente.

Sucede, sin embargo, que, conforme inclusive determina la Mayoría, el Ingeniero Zabala Toro *no* estaba cualificado para declarar como perito tasador, razón por la cual *no* se permitió su testimonio sobre el valor de las referidas aguas termales. Esto es, *y aun cuando tuvieron la oportunidad de hacerlo*, la parte demandada y su representación legal *crasamente incumplieron* con su obligación de probar el valor de las referidas aguas termales.

No es cuestión, como se afirma en la opinión del compañero Juez Asociado Señor Negrón García —la cual sostiene la errada Sentencia que hoy se emite— de que nos enfrentamos a un "caso peculiar y único en materia de expropiaciones" y de que no "sería justo" penalizar a la parte recurrente Hotel Coamo Springs, Inc. en estas circunstancias y de que lo que estamos haciendo es promoviendo "la celebración de un procedimiento en que el juzgador de instancia cuente con todos los elementos que le permitan hacer

cumplida justicia conforme el mandato de la resolución". Opinión concurrente y disidente del Juez Asociado Señor Negrón García, págs. 9 y 10.

De lo que realmente se trata es de que este Tribunal, de manera extraña, errónea e inaudita, le está concediendo a dicha parte, y su distinguida y experimentada representación legal, una improcedente segunda oportunidad que nunca antes se le ha concedido a parte o abogado alguno en esta clase de casos ni en ningún otro. Cabe preguntarse: ¿qué pensarán, y cómo se sentirán, otras partes, y sus humildes abogados —que en el pasado han sentido el *justo* rigor, y proceder, de este Tribunal, al este Foro haberle desestimado su reclamación por el correcto fundamento de que ellos fallaron en presentar, a nivel de instancia, la prueba correcta, suficiente o necesaria para probar su caso— al leer y enterarse de la decisión que hoy emite este Tribunal en el presente caso?

## IV

*Resumiendo*, a pesar del hecho de que a la parte demandada se le brindó, *y tuvo*, la oportunidad de ofrecer la prueba sobre valoración que requiere nuestra jurisprudencia que presente una parte demandada que cuestiona la valoración que hace el Estado de su propiedad en un procedimiento de expropiación forzosa, *dicha parte no cumplió con esa obligación*; esto es, *no* presentó prueba alguna sobre algunos aspectos de su caso, *ni* presentó prueba creíble y confiable sobre otros, y, *por último*, intentó presentar prueba que *no* era admisible en evidencia.

El tribunal de instancia, en *fiel cumplimiento* de su *obligación judicial* de resolver el asunto ante su consideración, y a base de la prueba ofrecida y admitida en evidencia, *efectivamente resolvió dicho asunto*, rechazando prueba "pericial" que era inadmisible en evidencia y adjudicando

la credibilidad de la prueba pericial testifical que admitiera. *No podemos pedirle más a dicho foro judicial; el mismo actuó conforme a derecho.* Ante esta situación, el *curso decisorio* a seguir por este Tribunal resultaba ser *meridianamente claro: confirmar la sentencia recurrida.*

El Tribunal, *sin embargo,* sorpresivamente ordena la devolución del caso al foro de instancia para que Hotel Coamo Springs, Inc., tenga una *nueva oportunidad* de presentar prueba pericial confiable y admisible sobre el valor de las aguas termales. ¿Por qué esta *segunda oportunidad* —esto es, este *segundo* "turno al bate"— a la parte demandada recurrente?

*En fin,* disentimos *no sólo* por razón de que la decisión que hoy se emite es contraria a *toda* la jurisprudencia anterior de este Tribunal en casos de expropiación *sino* por razón de que la misma *destruye uno de los principios rectores en la litigación civil,* cual es: que la "obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en la cuestión en controversia". Regla 10(B) de Evidencia de 1979, 32 L.P.R.A. Ap. IV. Véanse, en adición: *Reece Corp. v. Ariela, Inc.,* 122 D.P.R. 270, 286 (1988); *Asoc. Auténtica Empl. v. Municipio de Bayamón,* 111 D.P.R. 527, 531 (1981).[3]

---

[3] *En relación con la determinación —errónea a nuestro juicio—* que hace el Tribunal relativa a la tasa de interés que viene obligado a pagar el Estado respecto a la diferencia entre la suma de dinero originalmente consignada por el Estado y la suma de dinero que como "justa compensación" determinara el foro judicial, véase nuestra *Opinión disidente* en *E.L.A. v. Rexco Industries, Inc.,* 137 D.P.R. 683 (1994).